**Case No. 24-14186**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### ICARE CHILD DEVELOPMENT CENTER, LLC, et al.,

*Plaintiff- Appellants,*

**v.**

### ALETHEA CICERO-BROWN, et al.

*Defendant- Appellees.*

**Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:24-cv-02291-SEG**

---

### APPELLANTS' OPENING BRIEF

---

Naveen Ramachandrappa
Matthew R. Sellers
Bondurant Mixson & Elmore LLP
1201 West Peachtree Street, NW
Suite 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

Jared C. Miller
R. David Gallo
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Tel.:  404-523-5300
Fax: 404-522-8409

*Attorneys for Appellants iCare Child Development Center, LLC and
Lauren Davis*

**No. 24-14186**

**iCare Child Development Center, LLC, et al. v. Alethea Cicero-Brown, et al.**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellants iCare Child Development Center LLC and Lauren Davis hereby certify that the following persons may have an interest in the outcome of this appeal or are counsel for certain parties in this appeal:

- Bondurant, Mixson & Elmore, LLP (Appellate Counsel for Appellants)

- Carr, Christopher (Attorney General of State of Georgia)

- Cicero, Mark J. (Counsel for Appellees)

- Cicero-Brown, Alethea (Appellee)

- Davis, Lauren (f/k/a Lauren Kilby) (Appellant)

- Fallon, C. Brad (Counsel for Appellants)

- Fallon Law PC (Counsel for Appellants)

- Gallo, Robert David (Counsel for Appellants)

- Georgia Department of Early Care and Learning (Interested Party)

- Geraghty, Sarah E. (Judge, United States District Court for the Northern District of Georgia)

- Golden, Aleisha (Appellee)

- iCare Child Development Center LLC (Appellant)

**No. 24-14186**
**iCare Child Development Center, LLC, et al. v. Alethea Cicero-Brown, et al.**

- Jacobs, Amy M. (Appellee)

- Kasfir, Elisabetta (Appellee)

- Lindeborg, Bailee (Counsel for Appellees)

- Miller, Jared C. (Counsel for Appellants)

- Parker, Hudson, Rainer & Dobbs LLP (Counsel for Appellants)

- Ramachandrappa, Naveen (Appellate Counsel for Appellants)

- State of Georgia Department of Law (Counsel for Appellees)

- Sellers, Matthew R. (Appellate Counsel for Appellants)

- Sudman, Ira (Appellee)

- Webb, Bryan K. (Counsel for Appellees)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants iCare Child Development Center, LLC and Lauren Davis request oral argument.  This case presents a significant question about Appellants' constitutional right to due process before Appellees—employees of the Georgia Department of Early Care and Learning—could terminate Appellants as a provider for a government program that subsidizes childcare for low-income families.  The district court denied a preliminary injunction based on the erroneous holding that iCare had no property interest in continued participation in the program.  No court has squarely addressed the right of childcare providers to due process in this situation.  The stakes are high for Appellants; the district court found that iCare will suffer irreparable harm if it does not receive due process.  Oral argument will assist the Court in addressing this serious issue.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons and Corporate Disclosure
Statement ................................................................................. C-1

Statement Regarding Oral Argument ............................................ i

Table of Contents ........................................................................ ii

Table of Authorities .................................................................... iv

Jurisdictional Statement ........................................................... viii

Statement of the Issues ................................................................ 1

Statement of the Case .................................................................. 2

    I.    iCare's Business and the CAPS Program ..................... 3

    II.   DECAL's Audit of iCare and the Fallout of the Audit ................. 5

    III.  Proceedings Below ......................................................... 8

    IV.  Standard of Review ....................................................... 9

Summary of the Argument .......................................................... 10

Argument and Citation to Authority ........................................... 12

    I.    The district court erred in holding that iCare is unlikely to
        succeed on the merits of its procedural due process claim .......... 13

        A. The CAPS agreement and the CAPS Policy establish
           standards for dismissal of providers from CAPS .................... 14

        B. Georgia law requires a hearing before iCare's
           termination from CAPS ........................................................ 17

        C. iCare relied on CAPS ............................................................ 21

II.    The district court erred in holding that the balance of
       harms and public interest favored DECAL ...................................23


Conclusion  ......................................................................................27

Certificate of Compliance ...........................................................28

Certificate of Service ...................................................................29

## <u>TABLE OF CITATIONS</u>

**Cases**                                                                      **Page(s)**

*Baird v. Bd. of Educ.*,
    389 F.3d 685 (7th Cir. 2004)................................................................26

*Baird v. Bonta*,
    81 F.4th 1036 (9th Cir. 2023).........................................................24

*Bank of Jackson County v. Cherry*,
    980 F.2d 1354 (11th Cir. 1992).....................................................22

* *Barnes v. Zaccari*,
    669 F.3d 1295 (11th Cir. 2012)............................................... 10, 15

*Bd. of Regents v. Roth*,
    408 U.S. 564 (1972)......................................................................13

*BellSouth Telecomm., Inc. v. MCI Metro Access Transmission Servs., LLC*,
    425 F.3d 964 (11th Cir. 2005).......................................................12

*Brindley v. City of Memphis*,
    934 F.3d 461 (6th Cir. 2019).........................................................24

*Brown v. Ga. Dep't of Rev.*,
    881 F.2d 1018 (11th Cir. 1989).....................................................16

*Camden County v. Sweatt*,
    883 S.E.2d 827 (Ga. 2023) ...........................................................19

*Catoosa County v. Rome News Media*,
    825 S.E.2d 507 (Ga. Ct. App. 2019)............................................18

*Continental Training Servs., Inc. v. Cavazos*,
    893 F.2d 877 (7th Cir. 1990).........................................................22

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)......................................................................26

*DeKalb Cty. Bd. of Tax Assessors v. Barrett*,
    865 S.E.2d 192 (Ga. Ct. App. 2021)............................................................18

*Econ Dev. Corp. of Dade Cty., Inc. v. Stierhiem*,
    782 F.2d 952 (11th Cir. 1986).....................................................................13

\* *Gonzalez v. Gov. of Ga.*,
    978 F.3d 1266 (11th Cir. 2020).......................................9, 10, 12, 13, 23, 24

*Grayden v. Rhodes*,
    345 F.3d 1225 (11th Cir. 2003)............................................................10, 13

*In re Lindstrom*,
    30 F.4th 1086 (11th Cir. 2022).....................................................................18

*Jeffries v. Ga. Residential Fin. Auth.*,
    678 F.2d 919 (11th Cir. 1982)......................................................................14

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) .................................................................. 24-25

*Littlejohn v. Sch. Bd. of Leon Cty.*,
    __ F.4th __, 2025 WL 785143, at \*5 (11th Cir. Mar. 12, 2025) .................26

*McKinney v. Pate*,
    20 F.3d 1550 (11th Cir. 1994).....................................................................26

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978)........................................................................................16

*N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*,
    68 F.4th 1241 (11th Cir. 2023)....................................................................20

*Shahawy v. Harrison*,
    875 F.2d 1529 (11th Cir. 1989)...................................................................17

\* *Shawnee Tribe v. Mnuchin*,
    984 F.4th 94 (D.C. Cir. 2021) .............................................................. 11, 24

*Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*,
    589 F. Supp. 2d 759 (S.D. Miss. 2008) ........................................................21

*Symphony Med., LLC v. FFD GA Holdings, LLC*,
    893 S.E.2d 810 (Ga. Ct. App. 2023)............................................................18

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017)....................................................................................26

*Verlo v. Martinez*,
    820 F.3d 1113 (10th Cir. 2016) ..................................................................24

*Wilson v. Inthachak*,
    904 S.E.2d 414, 419 (Ga. Ct. App. 2024)...................................................19

**Statutes**

    O.C.G.A. § 20-1A-1 ....................................................................................22

    * O.C.G.A. § 20-1A-10.1 ............................................................... 16, 17, 19

    28 U.S.C. § 1292(a)(1) ............................................................................. viii

    28 U.S.C. § 1331...................................................................................... viii

    28 U.S.C. § 1367...................................................................................... viii

    42 U.S.C. § 1983................................................................................. viii, 8

    42 U.S.C. § 9857 .........................................................................................3

    42 U.S.C. § 9858n(6)...................................................................................4

**Regulations**

    45 C.F.R. § 98.1 .................................................................................. 3, 18

    45 C.F.R. § 98.1(b)(7)................................................................................17

    45 C.F.R. § 98.2 .........................................................................................19

45 C.F.R. § 98.10 ...................................................................3

45 C.F.R. § 98.20 ...................................................................3

45 C.F.R. § 98.30(a) ...............................................................3

45 C.F.R. § 98.30(b) ...............................................................4

45 C.F.R. § 98.30(c)(6) .........................................................21

45 C.F.R. § 98.40 ...................................................................4

45 C.F.R. § 98.40(b) ...............................................................4

45 C.F.R. § 98.41 ...................................................................4

45 C.F.R. § 98.50 ...................................................................3

## Other Authorities

2013 Ga. Laws, Act 32, § 6 .................................................20

Black's Law Dictionary (12th ed. 2024) ...............................18

Georgia's Subsidy Program Policy Manual,  https://caps.decal.ga.gov/
assets/downloads/CAPS/0-CAPS_Policy-Manual.pdf..... 4, 10, 14, 16, 20, 25

Merriam-Webster's Online Dictionary, https://www.merriam-
webster.com/dictionary/eligibility ................................................18

# JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction under 28 U.S.C. § 1331. Appellants iCare Child Development Center, LLC and Lauren Davis (together, "iCare") assert that Appellees Alethea Cicero-Brown, Aleisha Golden, Amy M. Jacobs, Elisabetta Kasfir, and Ira Sudman (together, "DECAL") violated 42 U.S.C. § 1983 by failing to provide procedural due process before terminating iCare from a federal-state funding program known as Child and Parent Services ("CAPS"). Doc. 1 at 23–25.

The district court had supplemental jurisdiction under 28 U.S.C. § 1367 over iCare's Georgia-law claims for defamation *per se*, breach of contract, and quantum meruit. Doc. 1 at 25–27.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because iCare appeals the district court's denial of a preliminary injunction. Doc. 36 at 32. iCare timely noticed that appeal within 30 days after the denial of the injunction. *See* Doc. 37.

## STATEMENT OF THE ISSUES

1.    The district court held that iCare has no protected property interest in continued participation in CAPS, even though the CAPS policy sets standards for the "adverse action" DECAL will take in response to policy violations and even though Georgia law affords a right to a pre-termination hearing.  The first issue on appeal is whether the district court erred in holding that iCare was unlikely to succeed on the merits of its procedural due process claim despite this policy language and Georgia law.

2.    Based on its conclusion that iCare would not likely succeed on the merits, the district court held that the balance of harms and public interest weighed against an injunction.  The second issue on appeal is whether the district court erred in finding the balance of harms and public interest weigh against an injunction when DECAL's action likely violated iCare's due process rights.

## STATEMENT OF THE CASE

As of October 2023, iCare provided childcare at eight daycare centers in metro Atlanta and north Georgia.  iCare's owner, Lauren Davis, proudly focused on serving low-income and special needs children.  iCare could afford to provide high-quality childcare to low-income families in large part because of the federal-state CAPS program, administered by DECAL.

That all changed in November 2023 when DECAL dismissed iCare from CAPS without notice and with no right of appeal.  *See* Doc. 31-5.  DECAL based the dismissal on iCare's inability to provide more than a year's worth of attendance records to DECAL auditors who arrived unannounced at four iCare daycares during business hours on October 24, 2023.  Ms. Davis tried to provide the records within two days after the audits, but DECAL refused to accept them.

iCare believed it would eventually be able to reapply to CAPS, as specified in CAPS policies and as other providers have done.  But it has trickled out over the course of this litigation that DECAL will not reinstate iCare because it claims to have uncovered that iCare billed DECAL for students who did not actually attend.  iCare strenuously denies these allegations—but DECAL has never given iCare a chance to rebut the allegation, nor has it identified the students who allegedly did not attend.

DECAL's conduct left iCare with no recourse to challenge the serious claims made against it.  And its actions have irreparably harmed iCare by causing it to lose

customers and putting it at risk of defaulting on loans it took in reliance on CAPS. iCare brought this action to vindicate its constitutional right to due process.

## I.    iCare's Business and the CAPS Program

Ms. Davis founded iCare Child Development Center, LLC, in May 2013, with a single daycare in Atlanta.  Doc. 8-9 ¶ 3.  iCare began expanding in fall 2021, Doc. 8-9 ¶ 12, and, by fall 2023, iCare had opened seven more daycare centers in metro Atlanta and north Georgia.  Doc. 8-9 ¶¶ 4–5.  iCare served hundreds of children and their families, including low-income children, children experiencing homelessness, and special needs children.  Doc. 8-9 ¶¶ 4–6.

iCare could provide high-quality childcare to so many children in part because of its participation in the federally funded, state-administered CAPS program.  Doc. 8-9 ¶ 7.  The CAPS program provides subsidies to low-income families to assist with the cost of childcare.  *See generally* 42 U.S.C. § 9857, *et seq.*; 45 C.F.R. §§ 98.1, 98.20.  The federal government gives funds to states, *see* 45 C.F.R. § 98.50, which in turn designate a "Lead Agency"—in Georgia, DECAL, Doc. 33-1 at 1—to administer the program, *see* 45 C.F.R. § 98.10.

CAPS regulations give parents the choice to either: (1) "enroll the child with an eligible child care provider that has a grant or contract for the provision of such services," or (2) "receive a child care certificate" to use as payment for childcare. 45 C.F.R. § 98.30(a).  Although regulations require DECAL to "increase parent

choice by providing some portion of the delivery of direct services via grants or contracts," 45 C.F.R. § 98.30(b), DECAL only issues "certificate[s]" for a family "to use at a specific provider that is already enrolled in CAPS."  Doc. 46 at 69:8–16.

iCare had a form agreement with DECAL to participate in CAPS.  Doc. 33-1.  The agreement states that participation in CAPS is at "DECAL's sole discretion," but that discretion is not unbounded.  Doc. 33-1 at 1.  Federal law sets criteria that an "eligible child care provider" like iCare must meet to qualify for CAPS, including obtaining appropriate state licenses and compliance with federally mandated health and safety criteria.  *See* 42 U.S.C. § 9858n(6); 45 C.F.R. §§ 98.40, 98.41.

Federal regulations also allow DECAL to impose "more stringent" criteria to become an "eligible child care provider."  *See* 45 C.F.R. § 98.40(b); Doc. 33-2 at 2.  DECAL has chosen to require Georgia CAPS providers to become "Quality Rated" through a state program that sets such additional criteria.  Doc. 33-1 at 2.  iCare fully complied with all eligibility criteria, and DECAL has never suggested otherwise.

The CAPS agreement and DECAL policies also spell out "[a]dverse actions" as "penalties for noncompliance with CAPS policies and rules."  Doc. 33-1 at 10; *see also* The Childcare and Parents Services Program (CAPS) Georgia's Subsidy Program Policy Manual § 12.4.15 (hereinafter, "CAPS Policy").[1]  The CAPS

---

[1] Available at: https://caps.decal.ga.gov/assets/downloads/CAPS/0-CAPS_Policy-Manual.pdf.  The district court order relied on the CAPS Policy.  Doc. 36 at 16 n.2.

agreement and Policy list three levels of sanction: (1) suspension, meaning payments to a provider are suspended; (2) dismissal, when a provider is terminated from the program but allowed to apply for reinstatement; and (3) disqualification, a "time-limited or permanent status that disallows child care providers from participating in CAPS."  Doc. 33-1 at 10–11; *see also* Doc. 31-16 at 1 (DECAL employee stating that "dismiss means your [*sic*] kicked out and disqualified means you can't come back").  The Caps Agreement states that "fail[ure] to comply with an investigation" is a basis for dismissal, not disqualification.  Doc. 33-1 at 10.

## II.    DECAL's Audit of iCare and the Fallout of the Audit

On October 24, 2023, DECAL conducted unannounced, simultaneous, on-site audits of four iCare centers during business hours, when iCare staff were trying to care for children.  Doc. 8-9 at ¶ 33; Doc. 46 at 18:17–20:10.  DECAL demanded access to a range of records, in some categories going back more than a year, for all CAPS students.  Doc. 8-9 ¶ 33.

Ms. Davis instructed her staff to "make every effort to attend to the auditors' records requests."  Doc. 8-9 ¶ 34; Doc. 46 at 23:1–18.  By contrast, DECAL claims it received "various levels of cooperation from the … different iCares."  Doc. 46 at 140:4–7.  iCare disputes that assertion, and the district court did not resolve the dispute.  *See* Doc. 36 at 8.  Regardless, one iCare center met DECAL's demands after

5

printing "three packs of paper worth of attendance records."  Doc. 46 at 61:24–62:7.  The other three were unable to do so on the spot.  Doc. 8-9 ¶ 37.

Two days after the audits, on October 26, Ms. Davis offered to provide DECAL the requested records on a reasonable timeline.  Doc. 8-9 ¶ 38.  DECAL did not take iCare up on this request, ostensibly to "remain consistent with CAPS policy," Doc. 31-3 at 1—even though DECAL allowed other providers to supplement attendance records after an audit.  Doc. 46 at 152:1–12.  Later, at the preliminary injunction hearing, DECAL suggested that it did not allow Ms. Davis to submit the voluminous records because of the "potential for alterations," Doc. 46 at 136:6–11.  But DECAL has offered no evidence of any actual alteration.

Then, on November 9, DECAL sent letters dismissing each iCare center from CAPS.  *See generally* Doc. 31-5; *see also* Doc. 8-9 ¶ 45.  The letters claimed that DECAL was "unsuccessful in obtaining requested documents from" each iCare center.  *See, e.g.*, Doc. 31-5 at 1.  Some of those letters were false.  DECAL did not visit four iCare centers to request documents, and one iCare center did provide the requested documents.  Doc. 8-9 ¶ 46.  DECAL nonetheless dismissed all iCare centers from CAPS, with no right of appeal.  *See generally* Doc. 31-5.  Notably, DECAL dismissed iCare but did not disqualify it.  *See generally id.*

The parties dispute what prompted the audit, though the district court did not resolve this dispute either.  The audits came on the heels of an October 4, 2023

complaint from Ms. Davis that DECAL paid the incorrect rate for "over 100 scholarships" across six iCare centers.  Doc. 31-1 at 1.  Ms. Davis asked DECAL to correct the rate "moving forward," *id.* at 4, but DECAL initially refused to do so unless Ms. Davis provided years' worth of attendance records within two business days.  Doc. 31-1 at 2; Doc. 46 at 14:18–15:25.  Ms. Davis explained that collecting voluminous records would be a "daunting task" when iCare simply wanted to "correct … rates moving forward."  Doc. 46 at 15:7–16.  DECAL initially resisted but then agreed to correct rates moving forward after Ms. Davis threatened to escalate her complaint.  Doc. 31-1 at 17.  DECAL conducted onsite audits less than two weeks later.

For its part, DECAL denies retaliating against iCare, Doc. 46 at 107:14–18, 136:21–24, claiming instead that it audited several CAPS providers in September and October 2023 due to "allegedly fraudulent activities of [a] former DECAL employee."  Doc. 46 at 136:12–20.  But DECAL admits that it never found that iCare was "involved in any way with this former employee."  Doc. 46 at 146:13–18.

iCare's dismissal from CAPS had an immediate effect, and not just on iCare's business.  DECAL stopped CAPS recipients from using their certificates at iCare locations as of November 19, just ten days after it sent the dismissal letters.  *See* Doc. 31-5 at 2.  To limit the impact on families, Ms. Davis used her personal savings to pay iCare's staff and to allow children who had received CAPS to remain enrolled.

7

Doc. 8-9 ¶¶ 51–52. But that was unsustainable, and iCare students ultimately had to find new daycare. By the time of the preliminary injunction hearing, iCare was down to three daycare centers from the eight it previously operated. Doc. 15-5 ¶ 15.

iCare has asked DECAL about reinstatement into CAPS since the dismissals. *See* Doc. 31-13 at 2–3. But—despite iCare having been dismissed rather than disqualified—DECAL has refused to entertain reinstatement. *See id.* at 2. Contrary to the CAPS agreement and policy, DECAL has told iCare that a provider cannot *ever* reapply to CAPS if the provider does not cooperate with an investigation. *See id.* DECAL also claims there is an "investigation … ongoing." *See id.* But DECAL admits it does not "know the status" of the investigation. Doc. 46 at 125:18–126:3. As things stand, iCare has no indication about when it can seek reinstatement.

## III.    Proceedings Below

Left with no recourse with DECAL, iCare filed this action in May 2024, alleging that DECAL denied iCare procedural due process in violation of 42 U.S.C. § 1983. Doc. 1 at 23–25. iCare also asserted state-law claims related to DECAL's false statements about iCare to third parties and DECAL's failure to pay iCare $242,550 for CAPS-eligible children who attended iCare programs. Doc. 1 at 25–27. The state-law claims are not at issue in this appeal.

iCare faced mounting losses and could not wait until final judgment for a remedy. Doc. 8-9 at ¶¶ 81–84. iCare moved for a preliminary injunction, requesting

8

reinstatement into CAPS pending resolution of the case. Doc. 8-1 at 21. The district court held a hearing and received exhibits and heard testimony from Ms. Davis, DECAL's in-house counsel Ira Sudman, and two DECAL employees responsible for audit and compliance, Aleisha Golden and Leigh Ann Hendrix. *See* Doc. 29.

The district court denied the preliminary injunction. *See* Doc. 36. The court agreed that iCare suffered irreparable harm from the dismissal, including the loss of customers and the inability to meet financial obligations. Doc. 36 at 27–29. But despite iCare's heavy reliance on CAPS, the court ruled that iCare "has no legal claim of entitlement to CAPS subsidies" that would support a procedural due process claim. Doc. 36 at 26. The court further found that the balance of harms and the public interest favored DECAL. Doc. 36 at 29–32. iCare timely appealed. Doc. 37.

## IV.    Standard of Review

This Court reviews the denial of a preliminary injunction "for abuse of discretion, reviewing any underlying legal conclusions *de novo* and any findings of fact for clear error." *Gonzalez v. Gov. of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, or makes findings of fact that are clearly erroneous." *Id.* (quotation omitted).

9

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in denying iCare a preliminary injunction because it "applie[d] the law in an … incorrect manner." *Gonzalez*, 978 F.3d at 1270 (quotation omitted). Reviewing the district court's "underlying legal conclusions *de novo*," this Court should reverse on the two grounds the district court ruled against iCare. *Id.*

First, the district court erred in ruling that iCare is unlikely to establish the "deprivation of a constitutionally-protected liberty or property interest," as an element of a procedural due process claim. *Grayden v. Rhodes*, 345 F.3d 1225, 1234 (11th Cir. 2003). DECAL's CAPS policies set out grounds to impose "penalties for noncompliance with CAPS policies and rules" on providers like iCare. *See* Doc. 33-1 at 10–11; CAPS Policy § 12.4.15. Policies that specify grounds for termination from a state program create a constitutionally protected property interest under this Court's precedent. *See Barnes v. Zaccari*, 669 F.3d 1295, 1304 (11th Cir. 2012). In addition, Georgia law gives iCare a right to a hearing. *See* O.C.G.A. § 20-1A-10.1. And iCare and the parents it serves relied on CAPS. These factors establish a protected property interest.

Second, the district court erred in ruling that the balance of harms and the public interest favor DECAL. The balance of harms and public interest "merge when, as here, the government is the opposing party," *Gonzalez*, 978 F.3d at 1270

10

(quotation omitted). The district court's analysis of the balance of harms and public interest was predicated on its erroneous conclusion that iCare has no property interest in continued participation in CAPS. Because iCare established a likelihood of success on the merits, the district court should have found that the balance of harms and public interest favor iCare. *See, e.g.*, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

The district court thus erred in denying a preliminary injunction, and this Court should reverse and remand with instructions for the district court to order DECAL to reinstate iCare into CAPS until DECAL provides iCare due process.

11

## ARGUMENT AND CITATION TO AUTHORITY

Reviewing the denial of a preliminary injunction for "abuse of discretion," this Court should reverse the district court. *Gonzalez*, 978 F.3d at 1270. Although the abuse of discretion "standard is very narrow and deferential," this Court reviews the district court's "underlying legal conclusions *de novo*." *Id.* (quotation omitted).

To obtain a preliminary injunction, iCare must show (1) "a substantial likelihood of success on the merits," (2) "an irreparable injury," (3) that "the harm from the threatened injury outweighs the harm the injunction would cause the opposing party," and (4) that "the injunction would not be adverse to the public interest." *Id.* at 1271. "The third and fourth factors merge when, as here, the government is the opposing party." *Id.* (quotation omitted).

The district court correctly found that iCare would suffer irreparable harm. Doc. 36 at 27–29. Dismissal from CAPS caused iCare the "loss of customers and goodwill," which "is an irreparable injury." *BellSouth Telecomm., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (quotation omitted). And iCare is "at risk of defaulting on loans and other financial obligations that [it] took on in reliance on continued participation in CAPS." Doc. 36 at 28.

But the district court erred by applying the law incorrectly to the likelihood of success on the merits and the merged balance-of-harms and public-interest factors. On the merits, a procedural due process claim has three elements: "(1) a deprivation

of a constitutionally-protected … property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The district court erroneously held as a matter of law that iCare had no constitutionally protected property interest. That error led the district court to erroneously balance the harms and public interest to deny a preliminary injunction. This Court should reverse on both grounds.

## I. The district court erred in holding that iCare is unlikely to succeed on the merits of its procedural due process claim.

iCare is likely to succeed on the merits of its procedural due process claim because, contrary to the district court ruling, iCare established a "constitutionally-protected … property interest" in continued participation CAPS. *Grayden*, 345 F.3d at 1234. On *de novo* review of the legal question whether iCare has a protected property interest, this Court should reverse. *See Gonzalez*, 978 F.3d at 1270. Notably, iCare need show "only *likely* or probable, rather than *certain*, success" to establish this factor. *Id.* at 1271 n.12 (emphasis in original).

To claim a property interest, iCare must show "more than a unilateral expectation" of continued participation in CAPS, but must instead show a "legitimate claim of entitlement" to it. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "[T]he hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause." *Econ. Dev. Corp. of Dade Cty., Inc. v. Stierhiem*, 782 F.2d 952, 954 (11th Cir. 1986). "A property interest in a benefit

13

may be established through existing rules or mutually explicit understandings that support the claim of entitlement to the benefit, or through the construction of statutes and regulations which define and delimit the interest asserted." *Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 926 (11th Cir. 1982).

Three factors confirm that iCare has a claim of entitlement to participate in CAPS: (1) terms of the CAPS agreement and CAPS Policy establishing standards for dismissal; (2) Georgia law requiring a hearing to determine eligibility for CAPS; and (3) the reliance of iCare and the families it served on CAPS.

### A. The CAPS agreement and CAPS Policy establish standards for dismissal of providers from CAPS.

First, the CAPS agreement and CAPS Policy establish standards for DECAL to impose "[a]dverse actions"—defined as "penalties for noncompliance with CAPS policies and rules"—on providers like iCare. *See* Doc. 33-1 at 10–11; CAPS Policy § 12.4.15. The CAPS agreement and CAPS Policy specify the "adverse actions" DECAL will take for different kinds of noncompliance. For example, DECAL can "suspend" a provider and place CAPS payments on hold for "[f]ailure to comply with mandatory health and safety training." Doc. 33-1 at 10. But under the policy, DECAL could not disqualify a provider, thus barring the provider from CAPS, for failure to comply with mandatory training. To the contrary, the CAPS agreement and CAPS Policy both state the "[a]dverse actions" DECAL "will" impose for various violations. Doc. 33-1 at 10–11; CAPS Policy § 12.4.15.

14

The same goes for iCare's right to reapply to the program. The CAPS agreement and Policy distinguish "dismissal" from "disqualification," and DECAL may only refuse to reinstate providers if they are disqualified. Doc. 33-1 at 10–11. Even for disqualification, the "period for disqualification will be based on the severity of the violation of policy, after a DECAL review has been conducted." *Id.* at 11. Yet here, despite not having disqualified iCare from CAPS, DECAL refuses to consider reinstatement. Doc. 31-13 at 1. The CAPS agreement and Policy do not authorize permanent disqualification for a provider that has been dismissed.

These constraints on DECAL's authority to dismiss CAPS providers give iCare a property interest under this Court's precedents. In *Barnes v. Zaccari*, this Court held that a public university student had a property interest in continued enrollment because university policy "list[ed] sanctions, including suspension and expulsion, that may be imposed upon a student *for a finding of responsibility* for violations of the Student Code of Conduct." 669 F.3d 1295, 1304 (11th Cir. 2012) (alterations adopted and emphasis in original). "This [policy] provision … promises … students they will not face disciplinary sanctions until they are found responsible for violating the Code." *Id.* "Until a student violates" that Code, "that student has a legitimate claim of entitlement to continued enrollment." *Id.* at 1305.

Like the university policy in *Barnes*, the CAPS agreement and CAPS Policy list "penalties *for noncompliance with CAPS policies and rules*." Doc. 33-1 at 10–

15

11; CAPS Policy § 12.4.15 (emphasis added). That language creates a legitimate claim of entitlement to continued participation in CAPS until a provider is found not to have complied with CAPS policies and rules. And even if a provider is found to have violated CAPS policies and rules, the CAPS agreement and CAPS Policy do not authorize permanent disqualification for failure to comply with an investigation.

In reaching a contrary conclusion, the district court homed in on a section of the CAPS Policy stating that iCare has no appeal rights from dismissal from the program. Doc. 36 at 17 (citing CAPS Policy § 18.4.1). That policy is contrary to a Georgia statute discussed below, *see* O.C.G.A. § 20-1A-10.1, and cannot stand for that reason alone. Moreover, iCare's procedural due process rights do not depend on whether DECAL gives iCare a right to appeal. That circular reasoning would turn due process into a matter of state government grace, rather than a protection against state action.

This Court has rejected such reasoning. As this Court has held, a "disclaimer" that purports not to create a property interest "is not dispositive of the issue" when a policy requires "cause" for removal. *Brown v. Ga. Dep't of Rev.*, 881 F.2d 1018, 1025 (11th Cir. 1989). This Court, not the state, must decide whether a property interest exists. "[F]ederal constitutional law determines whether [an] interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

16

The CAPS Policy's requirement of cause for termination makes sense. One of the purposes of CAPS is to provide "uninterrupted service to families and providers" and to "minimize[] disruption to children's learning and development." 45 C.F.R. § 98.1(b)(7). That purpose is not served if DECAL can terminate iCare with no process whatsoever, disrupting a child's learning environment and leaving families to find a new daycare provider on short notice.

### B. Georgia law requires a hearing before iCare's termination from CAPS.

iCare also has a property interest because Georgia law gives iCare a right to a hearing before dismissal from CAPS. *See* O.C.G.A. § 20-1A-10.1. State laws that "establish specific standards or procedures to be applied" before "the suspension, denial, or revocation" of a government benefit create a property interest. *Shahawy v. Harrison*, 875 F.2d 1529, 1532 (11th Cir. 1989) (physician had a property interest in medical privileges because "medical staff bylaws establish specific … procedures to be applied when considering the suspension, denial, or revocation" of privileges).

The relevant Georgia statute provides: "A determination by [DECAL] regarding … eligibility pursuant to any federal program or grant shall be preceded by notice and an opportunity for a hearing and shall constitute a contested case" under the Georgia Administrative Procedure Act. O.C.G.A. § 20-1A-10.1. The Georgia Administrative Procedure Act gives parties a right to "notice, the right to have subpoenas issued and enforced, to have counsel present, and to respond and

17

present evidence." *Symphony Med., LLC v. FFD GA Holdings, LLC*, 893 S.E.2d 810, 815 (Ga. Ct. App. 2023).

This Court interprets Georgia statutes under Georgia law, *see In re Lindstrom*, 30 F.4th 1086, 1091 (11th Cir. 2022), meaning the Court must give the "text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way … , and seek to avoid" surplusage, *DeKalb Cty. Bd. of Tax Assessors v. Barrett*, 865 S.E.2d 192, 194 (Ga. Ct. App. 2021) (quotation omitted).

So construed, the statute plainly requires a hearing before iCare's dismissal from CAPS.  CAPS is indisputably a "federal program."  *See* 45 C.F.R. § 98.1, *et seq.*  And by dismissing iCare, DECAL determined iCare is not "eligible" for CAPS. The statute does not define the term "eligible," so the Court may look to dictionaries to define the term.  *See Catoosa County v. Rome News Media*, 825 S.E.2d 507, 512 (Ga. Ct. App. 2019).  Two dictionaries on which the district court relied demonstrate that dismissal from the program is an eligibility determination.   Black's Law Dictionary defines "eligible" to mean "[f]it and proper to be selected or to receive a benefit."  *Eligible*, Black's Law Dictionary (12th ed. 2024).  And Merriam-Webster's Dictionary defines "eligibility" as "fitness or suitability to be chosen, selected, or allowed to do something."[2]  DECAL determined that iCare was no longer fit to be

---

[2] *Eligibility*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/eligibility (last visited Apr. 9, 2025).

allowed to serve as a CAPS provider when it dismissed iCare from the program. That was an eligibility determination under the ordinary meaning of the term.

The district court rejected this plain reading based on context and the "purpose and goals of the broader statutory scheme." Doc. 36 at 23. It interpreted the statute to apply only to "families' and children's eligibility for scholarship assistance." Doc. 36 at 22. But Georgia courts do not interpret statutes based on "spirit and intent," they interpret statutes based on the text. *Camden County v. Sweatt*, 883 S.E.2d 827, 839 (Ga. 2023) (quotation omitted). The text of this statute does not limit the right to a hearing to families; it refers broadly to all "determination[s] by [DECAL] regarding eligibility" for CAPS. O.C.G.A. § 20-1A-10.1. The district court added a limitation not found in the text. The district court was "not permitted to add language to the statute" in this way. *Wilson v. Inthachak*, 904 S.E.2d 414, 419 (Ga. Ct. App. 2024).

The district court also missed important statutory context. It concluded that the statute applies only to families and children because it thought that federal regulations use the term eligibility "exclusively in reference to families' and children's eligibility for scholarship assistance." Doc. 36 at 22. That is not true. Federal regulations define an "*eligible* child care provider" as a provider "licensed, regulated, or registered under applicable State or local law" that "[s]atisfies State and local [legal] requirements." 45 C.F.R. § 98.2 (emphasis added). The CAPS

19

agreement and CAPS Policy similarly refer to "*eligible* providers." Doc. 15-1 at 2; CAPS Policy § 12.3.1.2. This context demonstrates that the term eligibility includes providers like iCare.

For its part, DECAL tried to counter iCare's entitlement to a hearing with two orders of a Georgia superior court holding that there is no property interest in participating in CAPS, one from 2013 and one from 2019. Doc. 33-3, Doc. 33-4. Of course, "the decision of a state trial court is not binding on the federal courts as a final expression of the state law." *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, 68 F.4th 1241, 1244 (11th Cir. 2023) (quotation omitted). And neither decision is persuasive. The first came in May 2013, before the Georgia statute requiring a hearing became effective. *See* Doc. 33-4 at 5; *see also* 2013 Ga. Laws, Act 32, § 6. And the second does not even mention the statute. *See* Doc. 33-3. These decisions give the Court no guidance.

At bottom, the district court thought it bad policy to require process because it believed pre-dismissal hearings would "significantly strain DECAL's resources and compromise its ability to provide the 'proliferation' of childcare services envisioned by the state legislature." Doc. 36 at 23. That policy judgment is not the district court's to make. The district court had to enforce iCare's due process rights regardless of its view of the wisdom of the choice to afford hearings.

20

### C. iCare relied on CAPS.

iCare's reliance on CAPS also establishes a property interest. Precedent requires consideration of reliance interests because "[i]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth*, 408 U.S. at 577.

There can be no doubt about iCare's reliance; it went from one center to eight in reliance on the program. Doc. 8-9 ¶¶ 7, 9. One district court has recognized that a child care provider "does not merely benefit economically from" CAPS, but "is an intended recipient itself, particularly considering that a purpose of [CAPS] is to improve the quantity and quality of child care available to low income families." *Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 767 (S.D. Miss. 2008). Although *Spann* decided a Rehabilitation Act claim, not due process, its reasoning demonstrates why iCare has a property interest in the program.

The district court here nonetheless rejected iCare's reliance on CAPS as a "unilateral expectation." Doc. 36 at 26. DECAL similarly argued at the preliminary injunction hearing that iCare cannot rely on CAPS because CAPS is not "a contract to a provider but shall be considered assistance to the parent." *See* 45 C.F.R. § 98.30(c)(6).

Neither the district court nor DECAL gave sufficient weight to iCare's reliance as an indirect recipient of CAPS. As one of this Court's sister circuits has

explained, "Where primary beneficiaries of federal programs depend upon providers"—as families depended on iCare—"and where the statutory program plan contains extensive discussion of certification or eligibility requirements and procedures for granting or revoking certification or eligibility, it is difficult to conclude that there are no rules or mutually explicit understandings supporting the providers' claims of entitlement to certification or eligibility status." *Continental Training Servs., Inc. v. Cavazos*, 893 F.2d 877, 893 (7th Cir. 1990) (quotation and citation omitted). *Continental Training* dealt with a training program's eligibility for Pell Grants, *id.* at 879, but the same logic applies here.

To be sure, as the district court observed, "no citizen has a right to do business with the government." *Bank of Jackson Cty. v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992) (quotation omitted). But that rule does not apply when the government establishes criteria to dismiss a participant in one of its programs, as DECAL did.

\*    \*    \*

The district court resolved the likelihood of success on the merits based solely on the property interest element. Doc. 36 at 26. That error warrants reversal. iCare can easily satisfy the other elements of a procedural due process claim: state action and deprivation of due process. This case involves state action because the Georgia legislature created DECAL as "a department of the executive branch of [Georgia] state government." O.C.G.A. § 20-1A-1. DECAL gave iCare no process at all when

22

it terminated iCare from CAPS and informed iCare it could not reapply. Doc. 31-8 at 2; Doc. 31-11 at 2–3; Doc. 31-13 at 2. Indeed, DECAL's position all along has been that it has no obligation to provide any process. *See, e.g.*, Doc. 8-5 at 2.

Due process could make all the difference for iCare. DECAL has leveled serious accusations that iCare was uncooperative and that it fraudulently billed for students that did not attend its centers. Yet DECAL has refused even to name the students for which iCare submitted allegedly fraudulent bills, let alone given iCare an opportunity to clear its name before a neutral decisionmaker. And DECAL has apparently forever barred iCare from CAPS because of these charges, with no way for iCare to answer them. The purpose of due process is to prevent the government wielding unlimited power like this.

iCare has therefore satisfied the first factor for a preliminary injunction by establishing a likelihood of success on the merits of its procedural due process claim.

## II.    The district court erred in holding that the balance of harms and public interest favored DECAL.

The balance of harms and public interest favor iCare, not DECAL, and the district court erred in ruling otherwise. The Court may analyze these two prongs of the preliminary-injunction standard together because the balance of harms and the public interest "merge when, as here, the government is the opposing party." *Gonzalez*, 978 F.3d at 1271 (quotation omitted).

iCare's showing of a substantial likelihood that DECAL violated its due process rights means that the public interest and balance of harms support issuance of an injunction. "A party's likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest because there is generally no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe*, 984 F.3d at 102. After all, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (quotation omitted); *see also Brindley v. City of Memphis*, 934 F.3d 461, 472 (6th Cir. 2019) (same). By the same token, "[t]he government … cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). In short, allowing DECAL to violate due process does not serve the public interest, and it cannot harm DECAL to require it to comply with the Constitution's mandates.

This Court should review *de novo* the district court's balance-of-harms and public-interest ruling because the analysis rested on a legal error—that iCare has no property interest in participation in CAPS. *Gonzalez*, 978 F.3d at 1270. Because of the error, the district court did not consider the harms iCare will suffer from the deprivation of its due process rights, nor did it explain how allowing DECAL to act illegally would serve the public interest. *See* Doc. 36 at 29–32. As the cited authorities show, the district court erred as a matter of law when it failed to grant a

preliminary injunction to prevent a due process violation. This Court should therefore remand with instructions to enter a preliminary injunction. *See, e.g.*, *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) ("This court can independently grant an injunction after considering the proper factors.").

Although the Court may reverse the district court because of the legal error on the merits alone, it bears noting that the district court's analysis of the harms and public interest was also flawed on its own terms. The district court focused primarily on DECAL's obligation to repay the federal government for any misspent funds. *See* Doc. 36 at 29–30. Because DECAL "faces liability for any financial misdealing by its providers," the district court believed that DECAL would face greater harm from a preliminary injunction than iCare would without one. Doc. 36 at 30.

But the district court ignored that DECAL's policies authorize it to recoup any overpayments directly from providers. *See* Doc. 33-1 at 8; CAPS Policy § 12.4.7.3. DECAL could look to iCare if the federal government demanded reimbursement. And besides that, the district court ignored that DECAL has never in fact sought recoupment from iCare or presented any evidence that iCare was overpaid. The district court's conclusion was based on speculative harm to DECAL.

The district court also felt it could not "interfere with DECAL's discretionary authority to dismiss a provider that did not comply with its requirements." Doc. 36 at 30. That holding assumes DECAL has discretion to dismiss without process and

reflects the district court's error in holding that iCare is unlikely to succeed on its procedural due process claim.

Finally, the district court ruled that iCare's requested remedy—reinstatement as a CAPS provider "for the duration of this litigation"—would harm DECAL.  Doc. 36 at 31.  The district court got the law backwards.  "[R]einstatement and a properly conducted pre-termination hearing" is the "typical remedy" for a procedural due process violation.  *McKinney v. Pate*, 20 F.3d 1550, 1558 (11th Cir. 1994), *abrogation on other grounds recognized by Littlejohn v. Sch. Bd. of Leon Cty.*, __ F.4th __, 2025 WL 785143, at *5 (11th Cir. Mar. 12, 2025).[3]  "The kind of remedies that conform to due process must be available promptly and must generally include the possibility of reinstatement."  *Baird v. Bd. of Educ.*, 389 F.3d 685, 693 (7th Cir. 2004).  The district court ruling allows DECAL to deprive iCare of the benefit of participation in CAPS for the rest of this case with no procedural protection.

Besides, iCare acknowledged at the injunction hearing that it did not have a "right to be on CAPS in perpetuity" and that DECAL could moot the claim "by scheduling a hearing."  Doc. 46 at 173:13–175:10.  The district court did not have to "grant the total relief sought by" iCare, but could instead have "mold[ed] its decree to the exigencies of the case" by providing that injunction would dissolve if DECAL

---

[3] *Littlejohn* held that, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court abrogated *McKinney*'s articulation of the proper test for certain substantive due process violations.  2025 WL 785143, at *5–6.

gave iCare process.  *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017).  The district court should have granted an injunction rather than allowing DECAL to continue violating iCare's due process rights.

**CONCLUSION**

For these reasons, the Court should reverse the district court's denial of a preliminary injunction and remand with instructions for the district court to enjoin DECAL to reinstate iCare into CAPS until DECAL provides constitutionally adequate process.  Signatures and certificates follow.

Respectfully submitted this 10th day of April, 2025.

> */s/ Matthew R. Sellers*
> Naveen Ramachandrappa
> Matthew R. Sellers
> Bondurant Mixson & Elmore LLP
> 1201 West Peachtree Street, NW
> Suite 3900
> Atlanta, GA 30309
> Tel: 404-881-4100
> Fax: 404-881-4111
>
> Jared C. Miller
> R. David Gallo
> Parker, Hudson, Rainer & Dobbs LLP
> 303 Peachtree Street NE
> Suite 3600
> Atlanta, GA 30308
> Tel.:  404-523-5300
> Fax: 404-522-8409
>
> *Attorneys for Appellants iCare Child*
> *Development Center, LLC and Lauren Davis*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,310 words as counted by Microsoft Office 365, the word processing software used to prepare this brief.

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office 635, Times New Roman, 14 point font.

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed a true and correct copy of the foregoing **APPELLANTS' OPENING BRIEF** using the CM/ECF filing system which will cause copies to be served on counsel of record.

This 10th day of April, 2025.

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202
